# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Marriage of Nash*, 2012 IL App (1st) 113724

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF ELIZABETH NASH, Petitioner Appellee, and HERIBERTO LOPEZ ALBEROLA, Respondent-Appellee (Enrico J. Mirabelli, Intervenor and Contemnor-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-11-3724 |
| Rule 23 Order filed | September 10, 2012 |
| Rule 23 Order withdrawn | October 4, 2012 |
| Opinion filed | October 1, 2012 |
| Rehearing denied | October 17, 2012 |
| Modified upon denial of rehearing | October 22, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Absent a clear finding pursuant to section 501(c-1)(3) of the Illinois Marriage and Dissolution of Marriage Act that both petitioner and respondent lacked the financial ability or access to assets to pay reasonable attorney fees and costs, the trial court lacked statutory authority to order respondent's counsel to disgorge funds from the retainer paid by respondent to pay the fees of petitioner's counsel and the appointed representative of the parties' child. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-D-08689; the Hon. Nancy J. Katz, Judge, presiding. |

| | |
|---|---|
| Judgment | Disgorgement order reversed; contempt order vacated; cause remanded. |
| Counsel on Appeal | Lake Toback, of Chicago (Michael G. DiDomenico, of counsel), for appellant. |
| | Svenson Law Offices, of Chicago (Christine Svenson and Sean Hamann, of counsel), for appellee Elizabeth Nash. |
| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion. |
| | Justices Hall and Karnezis concurred in the judgment and opinion. |

## OPINION

¶ 1    During the course of marital dissolution proceedings between petitioner, Elizabeth Nash, and respondent, Heriberto Lopez Alberola, the trial court ordered respondent to pay interim attorney fees of $5,000 each to petitioner's attorney, A. Christine Svenson, and to the child representative, Patricia Lynn Wypych, pursuant to section 501(c-1)(3) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/501(c-1)(3) (West 2010)). In the same order, the trial court stated that if respondent did not pay the interim attorney fees within 14 days, then respondent's counsel, Enrico J. Mirabelli, must pay (*i.e.*, disgorge) the fees out of the $15,000 retainer that respondent had already paid to Mr. Mirabelli's law firm, Nadler, Pritikin and Mirabelli, LLC (NPM, LLC). Respondent did not pay. Mr. Mirabelli then withdrew as respondent's counsel and filed a petition on behalf of NPM, LLC, to intervene in the case, and he attached thereto a motion to reconsider the disgorgement order. The trial court allowed the intervention and denied Mr. Mirabelli's motion to reconsider. Mr. Mirabelli refused to pay, contending the trial court erred in its construction of section 501(c-1)(3) and unconstitutionally applied the Act to him by ordering him to pay the interim attorney fees out of the retainer paid to and earned by NPM, LLC. Recognizing that Mr. Mirabelli's argument raised novel questions of law, the trial court found him in "friendly contempt" for failing to pay the interim attorney fees and fined him $10 for each day he does not pay. Mr. Mirabelli appeals. We reverse the orders requiring Mr. Mirabelli to pay the interim attorney fees, vacate the order finding him in contempt and remand for further proceedings.

¶ 2    Petitioner and respondent were married on August 20, 2008, and have one child, Bella, who was born on February 17, 2004. Petitioner filed a petition for dissolution of marriage on September 2, 2010. On October 22, 2010, the trial court appointed Ms. Wypych, a partner

with the law firm of Rosenberg Wypych LLC, as child representative for Bella and ordered respondent to pay 100% of Ms. Wypych's fees. Ms. Wypych filed her appearance on November 1, 2010. Ms. Svenson appeared as counsel for petitioner on December 7, 2010.

¶ 3 Mr. Mirabelli, on behalf of NPM, LLC, entered into a representation agreement (the agreement) with respondent on January 4, 2011. The agreement provided that NPM, LLC, would represent respondent in return for a $15,000 retainer. The agreement further stated: "We are authorized by you to deposit the funds received as and for our retainer or any other funds received from you or on your behalf directly into our operating account." Mr. Mirabelli appeared as counsel for respondent on January 10, 2011.

¶ 4 On February 9, 2011, Ms. Wypych filed a petition for attorney fees pursuant to section 506(b) of the Act, which states in pertinent part: "The court shall enter an order as appropriate for costs, fees, and disbursements, including a retainer, when the attorney, guardian ad litem, or child's representative is appointed." 750 ILCS 5/506(b) (West 2010). Ms. Wypych requested fees in the amount of $11,274 to "be paid by the parties as this Court deems proper." The petition did not seek fees from Mr. Mirabelli.

¶ 5 Also, on February 9, 2011, Ms. Svenson filed a petition for attorney fees and costs seeking $50,000 from respondent. On April 12, 2011, Ms. Svenson filed a second-amended petition for attorney fees and costs seeking $50,000 from respondent. She did not seek fees from Mr. Mirabelli. Ms. Svenson's petition and second-amended petition for attorney fees and costs cited as their statutory basis section 501(c-1) of the Act. "Section 501(c-1) of the Act permits a trial court, while a case remains pending, to assess attorney fees and costs in favor of the petitioning party's counsel." *In re Marriage of Radzik*, 2011 IL App (2d) 100374, ¶ 40 (citing 750 ILCS 5/501(c-1) (West 2008)). "In enacting section 501(c-1), the legislature's goal was to level the playing field by equalizing the parties' litigation resources where it is shown that one party can pay and the other party cannot." *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 315 (2001). Section 501(c-1)(3) states in pertinent part:

"In any proceeding under this subsection (c-1), the court (or hearing officer) shall assess an interim award against an opposing party in an amount necessary to enable the petitioning party to participate adequately in the litigation, upon findings that the party from whom attorney's fees and costs are sought has the financial ability to pay reasonable amounts and that the party seeking attorney's fees and costs lacks sufficient access to assets or income to pay reasonable amounts. *** If the court finds that both parties lack financial ability or access to assets or income for reasonable attorney's fees and costs, the court (or hearing officer) shall enter an order that allocates available funds for each party's counsel, including retainers or interim payments, or both, previously paid, in a manner that achieves substantial parity between the parties." 750 ILCS 5/501(c-1)(3) (West 2010).

¶ 6 "Except for good cause shown, a proceeding for (or relating to) interim attorney's fees and costs in a pre-judgment dissolution proceeding shall be nonevidentiary and summary in nature." 750 ILCS 5/501(c-1)(1) (West 2010).

¶ 7 On April 13, 2011, the trial court conducted a summary, nonevidentiary hearing on the petitions for attorney fees, the transcript for which has not been included in the record on

appeal. Following the hearing, the trial court entered a written order stating respondent "shall pay to Lynn Wypych and Christine Svenson $5,000 each within 14 days or Mr. Mirabelli shall disgorge said amounts to Wypych and Svenson within said time frame." The trial court made no specific findings as to the parties' financial abilities to pay reasonable attorney fees.

¶ 8 Respondent did not make the $5,000 payments to Ms. Wypych and Ms. Svenson. On June 13, 2011, Mr. Mirabelli filed a motion to withdraw as counsel for respondent. The trial court granted the motion to withdraw on June 21, 2011.

¶ 9 On June 28, 2011, Mr. Mirabelli filed a petition, on behalf of NPM, LLC, to intervene in the case, which the trial court granted on July 27, 2011. Mr. Mirabelli attached to the petition a motion to reconsider the April 13, 2011, order. In his motion to reconsider, Mr. Mirabelli argued: (1) the trial court failed to make the required finding under section 501(c-1)(3) that petitioner lacked the ability to pay her own attorney fees; (2) the trial court's order of April 13, 2011, is void because the court lacked statutory authority to order Mr. Mirabelli (on behalf of NPM, LLC) to disgorge the $5,000 each to Ms. Wypych and Ms. Svenson from fees NPM, LLC, had already been paid and earned and deposited into its operating account; (3) requiring NPM, LLC, to turn over fees it had already earned and deposited into its operating account would amount to an unwarranted deprivation of its property rights and constitute a violation of the constitutional right to substantive and procedural due process, the contracts clause, and the doctrine of separation of powers; and (4) the discovery of certain new evidence regarding petitioner's finances warranted reconsideration of the April 13, 2011, order.

¶ 10 On November 15, 2011, the trial court denied Mr. Mirabelli's motion to reconsider. The record on appeal contains no transcript of the hearing on the motion. The record *does* contain the trial court's detailed written order, which states in pertinent part:

"7. That at the time of the non-evidentiary hearing on the initial Petitions for Fees, the Court found that [petitioner] lacked the ability to pay her fees and lacked access to funds to pay for her legal fees.

8. That though said finding was not placed into the written court order of that date the Court finds that such a 'finding' was in fact made on that date.

9. The Court further finds that [respondent] in fact had 'access to funds' for the payment of legal fees by virtue of the fact he borrowed funds from a family member in the amount of $15,000.00 and that said funds were paid to NPM, LLC as a retainer.

10. That the Court finds that the property interest of an attorney in fees paid to the attorney, even if earned, does not prohibit the disgorgement of those funds and the use of those funds for the payment of legal fees to attorneys representing other litigants in the case.

* * *

13. That the time in which [respondent] was allotted to pay the fees has expired and that the fees are now due and owing from NPM, LLC to Svenson and Wypych.

14. That the Court finds that the argument advanced by NPM, LLC that it has a protectable property interest in the funds earned, to wit, that at the time of the hearing,

NPM, LLC represented that all but approximately $700.00 of the $15,000.00 paid for fees had in fact been earned was advanced in good faith. However, the Court rejects the argument finding that whether the fees are retained in the attorney's trust fund account or whether they have been moved to an operating account as 'earned' fees is not relevant to the Court's decision and the Court finds the distinction not to be determinative of whether or not there can be a disgorgement pursuant to the statute.

15. The Court finds that the case law on disgorgement supports its decision but also finds that the argument advanced by NPM, LLC that it has a protectable property interest in the fees it has earned raises a novel question of law.

\*\*\*

17. The Court finds that [Mr. Mirabelli] has informed the Court that he is refusing to follow the Court's order and has requested this Court to enter a 'friendly contempt' for the purpose of making this matter ripe for appeal.

18. That the Court further finds that [Mr.] Mirabelli's refusal to comply with this Court's order was done with respect to the process and solely to advance a legal theory which this Court finds may be an issue of first impression."

¶ 11 The trial court found Mr. Mirabelli in "friendly" contempt and fined him $10 per day for each day that he does not comply with the April 13, 2011, order requiring the disgorgement of $5,000 each to Ms. Svenson and Ms. Wypych. The trial court stayed all collection proceedings pending the filing of a timely notice of appeal. Mr. Mirabelli filed this timely appeal on December 9, 2011.

¶ 12 First, we address the trial court's order requiring Mr. Mirabelli to disgorge $5,000 to Ms. Svenson. Then, we address the trial court's order requiring Mr. Mirabelli to disgorge $5,000 to Ms. Wypych.

¶ 13 I. The Disgorgement Order With Respect to Ms. Svenson

¶ 14 The trial court's order requiring Mr. Mirabelli to disgorge funds on behalf of NPM, LLC, to pay Ms. Svenson's interim attorney fees was made pursuant to section 501(c-1) of the Act. An order awarding interim attorney fees under section 501(c-1) of the Act is not an appealable interlocutory order. *Radzik*, 2011 IL App (2d) 100374, ¶ 45. "However, when a party appeals from a contempt sanction imposed for violating an interim fee order, the contempt finding is final and appealable and presents to the reviewing court the propriety of the underlying order." *Id.*

¶ 15 The trial court's decision to award attorney fees is generally reviewed for an abuse of discretion. *Id.* However, to the extent an appeal from the award of attorney fees "hinges on issues of statutory construction and constitutionality, our standard of review is *de novo*." *Beyer*, 324 Ill. App. 3d at 309.

¶ 16 Mr. Mirabelli makes a number of arguments on appeal as to how the trial court allegedly erred on April 13, 2011, when it ordered him to disgorge $5,000 to Ms. Svenson from the $15,000 retainer that respondent had already paid to NPM, LLC. Mr. Mirabelli contends: (1) the April 13, 2011, order is void as to him because no pleading was on file requesting that

he pay Ms. Svenson's attorney fees; (2) the trial court failed to make the required finding under section 501(c-1)(3) that respondent lacked the ability to pay reasonable attorney fees and costs; (3) the portion of the $15,000 retainer paid to and earned by NPM, LLC, does not constitute "available funds" to be disgorged under section 501(c-1)(3); and (4) the trial court unconstitutionally applied section 501(c-1)(3) to Mr. Mirabelli.

¶ 17    We address Mr. Mirabelli's argument that the trial court failed to make the requisite finding under section 501(c-1)(3) that respondent lacked the ability to pay reasonable attorney fees and costs, as our resolution of this argument is dispositive of Mr. Mirabelli's appeal. In construing section 501(c-1)(3), we note, "[t]he fundamental objective of statutory construction is to ascertain and give effect to the legislature's intent. [Citation.] The most reliable indicator of legislative intent is the statutory language, which must be given its plain and ordinary meaning. [Citation.] When the statutory language is clear and unambiguous, it must be applied as written without resorting to extrinsic aids of construction." *In re Marriage of Earlywine*, 2012 IL App (2d) 110730, ¶ 18.

¶ 18    The statutory language of section 501(c-1)(3), quoted earlier in this opinion, clearly and unambiguously states that prior to entering an order requiring an opposing party to pay the petitioning party's interim attorney fees, the court must find that the opposing party has the financial ability to pay reasonable amounts and that the petitioning party lacks sufficient access to assets or income to pay reasonable amounts. Section 501(c-1)(3) also clearly and unambiguously states that prior to entering an order requiring an attorney to disgorge funds from his retainer for the payment of interim attorney fees and costs to the other party's counsel, the trial court must find "*both parties* lack financial ability or access to assets or income for reasonable attorney's fees and costs." (Emphasis added.) 750 ILCS 5/501(c-1)(3) (West 2010).

¶ 19    In its April 13, 2011, order, the trial court first stated respondent "shall pay to *** Christine Svenson [interim attorney fees of] $5,000 *** within 14 days." Under section 501(c-1)(3), such an order required a finding by the trial court that petitioner lacked sufficient access to assets or income to make the $5,000 payment and respondent possessed the financial ability to make said payment. The April 13, 2011, order contained no such factual finding.

¶ 20    The April 13, 2011, order next stated that if respondent failed to make the $5,000 payment to Ms. Svenson within 14 days, then "Mr. Mirabelli shall disgorge [the $5,000] to *** Svenson within said time frame." Under section 501(c-1)(3), such an order required a finding by the trial court that both petitioner and respondent lacked the financial ability or the access to assets or income to make said payment. The April 13, 2011, order contained no such factual finding.

¶ 21    In its subsequent order of November 15, 2011, denying Mr. Mirabelli's motion to reconsider, the trial court found in paragraphs seven and eight that petitioner "lacked the ability to pay her fees and lacked access to funds to pay for her legal fees" and that "though said finding was not placed into the [April 13, 2011, court order] *** such a 'finding' was in fact made on that date." However, the trial court made no similar finding with respect to respondent. Instead, the trial court found in paragraph nine that respondent "had 'access to

funds' for the payment of legal fees by virtue of the fact he borrowed funds from a family member in the amount of $15,000 and that said funds were paid to NPM, LLC as a retainer."

¶ 22    The trial court's finding in paragraph nine with respect to respondent can be read in two ways. First, as the court specifically stated respondent "had 'access to funds' for the payment of legal fees" from monies borrowed from a family member, the finding can be read as meaning respondent had the ability at the time of the nonevidentiary hearing to pay Ms. Svenson's reasonable interim attorney fees. Such a finding would provide the necessary factual basis (missing in the April 13, 2011, order) for ordering respondent to pay Ms. Svenson's interim attorney fees from his own funds, but it would not provide the necessary factual basis for ordering disgorgement of funds from NPM, LLC's retainer so as to pay said fees. However, the trial court further stated in paragraph nine that the funds respondent had borrowed from the family member had been paid to NPM, LLC, as a $15,000 retainer which, under section 501(c-1)(3), cannot be accessed absent a disgorgement order. This portion of paragraph nine can be read as meaning respondent did *not* have the ability at the time of the nonevidentiary hearing to pay Ms. Svenson's reasonable interim attorney fees from monies under his own control, and that disgorgement of funds to Ms. Svenson from the $15,000 retainer paid to NPM, LLC, was necessary. Such a finding would provide the necessary factual basis for the disgorgement order (but would not provide the necessary factual basis for the portion of the April 13, 2011, order that first required respondent to pay Ms. Svenson's interim attorney fees from his own funds).

¶ 23    Thus, while paragraphs seven and eight of the November 15, 2011, order unambiguously stated petitioner lacked the financial ability and access to funds to pay Ms. Svenson's interim attorney fees at the time of the nonevidentiary hearing, paragraph nine of the order was ambiguous as to whether the court made a similar finding regarding respondent. Given the ambiguity of the trial court's November 15, 2011, order with respect to respondent's finances, we cannot say the trial court made the required finding under section 501(c-1)(3) for disgorgement, specifically, that both petitioner *and* respondent lacked the financial ability or access to assets or income for reasonable attorney fees and costs. In the absence of a clear finding that *both* petitioner and respondent lacked financial ability or access to assets or income for reasonable attorney fees and costs, the trial court erred by ordering Mr. Mirabelli to disgorge funds to Ms. Svenson for payment of her interim attorney fees. Accordingly, we reverse the disgorgement order.

¶ 24    Petitioner argues that our holding would contradict our statement in *In re Marriage of Johnson*, 351 Ill. App. 3d 88 (2004), that "disgorgement is simply a method the court uses to redistribute the necessary available funds when the obligated party cannot otherwise afford to pay the interim award." *Id.* at 97. Petitioner argues that neither party here could afford to pay the interim award and, therefore, under *Johnson* the court acted within its statutory authority to redistribute the necessary available funds by ordering Mr. Mirabelli to disgorge monies from NPM, LLC's earned retainer. We disagree. Petitioner's argument *assumes* that neither party could afford to pay the interim attorney fee award; however, the trial court never made a clear finding with respect to respondent's financial ability or access to assets or income to pay Ms. Svenson's interim attorney fees, as it was required to do under the unambiguous language of section 501(c-1)(3). In the absence of such a finding, the trial court

-7-

erred in entering the disgorgement order against Mr. Mirabelli.

¶ 25 Before concluding, we note petitioner makes no arguments that the missing transcripts from the hearing on the petitions for attorney fees and the hearing on Mr. Mirabelli's motion to reconsider the April 13, 2011, order contained any oral pronouncements by the trial court regarding respondent's financial inability to pay the interim attorney fees that would support the disgorgement order. Petitioner makes no argument that Mr. Mirabelli provided an insufficient record for appellate review. For the foregoing reasons, we reverse the April 13, 2011, disgorgement order with respect to Ms. Svenson.

¶ 26 II. The Disgorgement Order With Respect to Ms. Wypych

¶ 27 As discussed above, on October 22, 2010, the trial court appointed Ms. Wypych, a partner with the law firm of Rosenberg Wypych LLC, as child representative for Bella and ordered respondent to pay 100% of Ms. Wypych's fees. On February 9, 2011, Ms. Wypych filed a petition for $11,274 in attorney fees and costs pursuant to section 506 of the Act. Ms. Wypych argued that notwithstanding the trial court's order requiring respondent to pay 100% of her fees, both parties have an obligation to pay her fees pursuant to section 506(b) of the Act, which states:

"The court shall enter an order as appropriate for costs, fees, and disbursements, including a retainer, when the attorney, guardian ad litem, or child's representative is appointed. *** Any order approving the fees shall require payment by either or both parents ***." 750 ILCS 5/506(b) (West 2010).

¶ 28 Section 506(b) specifically provides that the provisions of section 501 "shall apply to fees and costs for attorneys appointed under [section 506]." 750 ILCS 5/506(b) (West 2010). Pursuant to section 501, the trial court may order Mr. Mirabelli to disgorge monies from previously paid retainers to pay Ms. Wypych's interim attorney fees only if "the court finds that both parties lack financial ability or access to assets or income for reasonable attorney's fees and costs." 750 ILCS 5/501(c-1)(3) (West 2010). The trial court made no clear finding here with respect to respondent's financial ability or access to assets or income to pay Ms. Wypych's interim attorney fees (see our discussion above) and, therefore, the court erred by ordering Mr. Mirabelli to disgorge funds to Ms. Wypych. Accordingly, we reverse the disgorgement order with respect to Ms. Wypych.

¶ 29 III. The Contempt Order

¶ 30 Next we consider the November 15, 2011, order finding Mr. Mirabelli in "friendly contempt" for failing to comply with the disgorgement order. We have held that "[i]t is appropriate to vacate a contempt finding on appeal where the refusal to comply with the court's order constitutes a good-faith effort to secure an interpretation of an issue without direct precedent." *Radzik*, 2011 IL App (2d) 100374, ¶ 67. In finding Mr. Mirabelli in "friendly contempt," the trial court here stated that his "refusal to comply with this Court's order was done with respect to the process and solely to advance a legal theory which this Court finds may be an issue of first impression." As such, we vacate the contempt order.

¶ 31     As a result of our disposition of this case, we need not address the other arguments on appeal.

¶ 32     Disgorgement order reversed; contempt order vacated; cause remanded.