2015 IL App (1st) 133424

SECOND DIVISION
February 24, 2015

Nos. 1-13-3424 & 1-13-3637 (Cons.)

| | | |
|---|---|---|
| JANE DOE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| NORMAN WEINZWEIG, | ) | No. 12 L 7234 |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | |
| (IJL Will Do, LLC, d/b/a It's Just Lunch, | ) | Honorable |
| | ) | Jeffrey Lawrence, |
| Defendant.) | ) | Judge Presiding. |

JUSTICE LIU delivered the judgment of the court, with opinion.
Justices Neville and Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Norman Weinzweig, appeals two contempt orders entered by the circuit court. In the first order, the court held defendant in indirect civil contempt for failing to comply with a Rule 215 (Ill. S. Ct. R. 215 (eff. Mar. 28, 2011)) order that required him to undergo a physical examination and blood test. After defendant filed a notice of appeal from the contempt order, the court entered a second order for indirect civil contempt and a judgment of default against him. On appeal, defendant seeks to vacate both contempt orders and the underlying Rule 215 order. He contends that the court abused its discretion when it entered the Rule 215 order and that the order violated his patient-physician privilege and his constitutional right to privacy. He further contends that he had a good-faith basis for refusing to comply with the Rule 215 order and that

the court lacked jurisdiction to enter the second contempt order. We affirm in part and vacate in part.

¶ 2                                    BACKGROUND

¶ 3     On June 27, 2012, plaintiff filed suit against defendant, Weinzweig, and IJL Will Do, LLC, d/b/a It's Just Lunch (IJL), a matchmaking service.[1] In her complaint, plaintiff alleged that she met defendant during a dinner date arranged by IJL. The parties went on another date on or about July 3, 2011. Plaintiff alleged that at one point during the evening, she and defendant both "affirmed that neither had any sexually transmitted diseases." In reliance on defendant's representation that he was "disease free," she agreed to have sexual relations with him. Shortly afterward, she began experiencing symptoms of the herpes 2 virus (Herpes 2). Plaintiff claimed that prior to her encounter with defendant, she had never been diagnosed with herpes 2 nor had she experienced any symptoms of the disease. Had defendant informed her that he had herpes 2, plaintiff alleged, she would never have engaged in sexual relations with him. Plaintiff seeks recovery against defendant for battery, intentional infliction of emotional distress, negligence, fraud/concealment, and intentional misrepresentation.

¶ 4     Defendant moved to dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2012)). Defendant attached a copy of certain medical records containing a lab report and a signed declaration to his motion. The medical report that defendant presented with his motion contained the lab test results for several sexually transmitted diseases, one of which was herpes 2. In his declaration, defendant attested that in October 2010, he had undergone "a battery of tests including testing for the Herpes II virus" and that he "received a negative test result for Herpes II." He stated that he "was not experiencing any signs or symptoms" of herpes 2 when he was tested. Defendant explained that the lab report

---

[1]     IJL was dismissed from the lawsuit on October 11, 2013 and is not a party to this appeal.

result for herpes 2 indicated "Low: < 80 index," which meant that he tested negative for the virus. Defendant stated that based on the negative test result, the absence of any signs or symptoms of herpes 2, and his medical knowledge and training as a board-certified physician, he believed that he "was not infected with the Herpes II virus" on or about July 3, 2011.

¶ 5    Plaintiff subsequently filed an amended complaint. The court entered and continued defendant's motion to dismiss so as to allow discovery, and defendant answered the amended complaint. He asserted no counterclaims or affirmative defenses. He denied that he had exposed plaintiff to herpes 2 and denied telling her that he was free of disease during their encounter.

¶ 6    During discovery, plaintiff sought information about defendant's medical condition. She propounded interrogatories and a request to admit regarding any herpes 2 testing that defendant had undergone subsequent to July 3, 2011. She also requested production of medical records concerning any sexually transmitted diseases that he had from 2007 to the present. Defendant objected to the discovery requests on the basis of relevance and physician-patient privilege.

¶ 7    The circuit court sustained defendant's objections on the grounds of physician-patient privilege. Plaintiff then filed a Rule 215 motion, in which she asked the court to order a "visual and manual physical examination that involves a discussion of [defendant's] medical and sexual history" followed by a blood test for the virus. Plaintiff asserted that defendant had placed his physical condition in controversy by denying that he had exposed her to herpes 2. She argued that there was good cause for a Rule 215 examination because it was "the only avenue available for [her] to prove [defendant's] status as a carrier of herpes simplex virus-2."

¶ 8    Defendant responded that he had not placed his physical condition in controversy merely by denying the allegations in the complaint. He contended that plaintiff failed to show good cause under Rule 215 to justify an order requiring him to undergo "invasive tests" and that

plaintiff's motion was simply an attempt to circumvent the physician-patient privilege. He also argued that a compulsory examination under Rule 215 would violate his right to privacy under the Illinois Constitution.[2]

¶ 9      On September 27, 2013, the circuit court granted plaintiff's Rule 215 motion and ordered the parties to schedule the examination by October 11, 2013. The parties failed to schedule the examination by the deadline.

¶ 10      Subsequently, defendant filed a Rule 308 (Ill. S. Ct. R. 308 (eff. Feb. 26, 2010)) motion to certify questions on the Rule 215 order, and plaintiff filed a motion to compel defendant to submit to the examination. On October 29, 2013, the circuit court denied defendant's motion and granted plaintiff's motion. Defendant's counsel suggested a friendly contempt order so that defendant could seek immediate appeal of the Rule 215 order. The court found defendant in indirect civil contempt, imposed sanctions of $1,000, *instanter*, and ordered defendant to schedule the examination. Defendant filed a notice of appeal from this order on October 30, 2013.

¶ 11      Plaintiff subsequently filed a motion for sanctions pursuant to Rule 219(c) and requested that the court strike defendant's pleadings and enter a default judgment against him. Defendant responded that the court lacked jurisdiction to consider plaintiff's motion while the appeal of the first contempt order was pending. On November 14, 2013, the court entered an order finding defendant in indirect civil contempt and again imposed sanctions of $1,000. The court granted plaintiff's Rule 219 (Ill. S. Ct. R. 219 (eff. July 1, 2002)) motion and entered an order striking defendant's pleadings and awarding a default judgment. Defendant filed an appeal from this order that same day.

---

[2]      On appeal, defendant argues for the first time that the Rule 215 examination would violate his right to privacy under the United States Constitution.  He did not raise this argument during the trial proceedings.

¶ 12    This court has consolidated both appeals. We have jurisdiction pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Feb. 26, 2010).

¶ 13                                    ANALYSIS

¶ 14    Defendant argues that the court abused its discretion in finding him in indirect civil contempt on October 29, 2013 and November 14, 2013 because the underlying Rule 215 order was improper. A trial court's finding that a party has committed indirect civil contempt "will not be disturbed on appeal unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." (Internal quotation marks omitted.) *Bank of America, N.A. v. Freed*, 2012 IL App (1st) 113178, ¶ 20. A discovery order is not a final order and is not ordinarily appealable. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). However, a party challenging a discovery order may test the propriety of the order through contempt proceedings. *Id.* (citing *Eskandani v. Phillips*, 61 Ill. 2d 183, 194 (1975)). "When an individual appeals contempt sanctions imposed for violating, or threatening to violate, a pretrial discovery order, the discovery order is subject to review." *Norskog*, 197 Ill. 2d at 69. Moreover, "It is the order of discovery, not merely the grounds upon which it was based, that is subject to review." *Id.*

¶ 15                              A. Rule 215 Order

¶ 16                        1. Medical condition in controversy

¶ 17    Defendant argues that Rule 215 does not apply to him because he did not voluntarily place his medical condition in controversy. Specifically, he argues that "Rule 215 was designed to give circuit courts limited discretion in personal-injury cases 'to order the *plaintiff* to submit to a physical examination.' " (Emphasis in original.) He further argues that the mere denial of allegations in the complaint is not enough to place his medical condition in controversy.

Additionally, he argues that "Rule 215 does not sanction government-ordered physical examinations *** where an *anonymous* plaintiff files suit." (Emphasis in original.) Finally, he argues plaintiff cannot prove causation because a blood test cannot establish whether he was infected with herpes 2 at the time of the July 2011 encounter.

¶ 18    Plaintiff responds that the court did not abuse its discretion in ordering the examination because Rule 215 is not limited to plaintiffs. She argues that the Rule 215 order is proper because defendant "placed his condition at issue by producing some medical records and presenting a Declaration *** stating that he was not infected with the Herpes II virus as of October 14, 2010." Plaintiff maintains that defendant's response to the allegations in the complaint—*i.e.*, submitting medical records and a signed declaration in support of his motion to dismiss—is "far more than a 'mere denial.' " She further asserts that defendant has forfeited any proximate cause argument.

¶ 19    Illinois Supreme Court Rule 215 provides, in relevant part:

> "(a) Notice; Motion; Order**.** In any action in which the physical or mental condition of a party or of a person in the party's custody or legal control is in controversy, the court, upon notice and on motion made within a reasonable time before the trial, may order such party to submit to a physical or mental examination by a licensed professional in a discipline related to the physical or mental condition which is involved. ***

> * * *

> (d) Impartial Medical Examiner.

> (1) *Examination Before Trial*. A reasonable time in advance of the trial, the court may on its own motion or that of any party, order an impartial physical or mental examination of a party where conflicting medical testimony, reports or other documentation has been offered as

6

proof and the party's mental or physical condition is thereby placed in issue, when in the court's discretion it appears that such an examination will materially aid in the just determination of the case."

Ill. S. Ct. R. 215(a), (d)(1) (eff. Mar. 28, 2011).

¶ 20    An order requiring a party to submit to a Rule 215 examination is generally reviewed for an abuse of discretion (*Harris v. Mercy Hospital*, 231 Ill. App. 3d 105, 107 (1992) (citing *In re Conservatorship of the Estate of Stevenson*, 44 Ill. 2d 525 (1970))) unless the dispute presents a question of law, which we review *de novo* (*Norskog*, 197 Ill. 2d at 71). Here, the question is whether the circuit court properly found, as justification for its Rule 215 order, that defendant's physical condition was "in controversy"; that "conflicting medical testimony, reports, or other documentation *** offered as proof" placed his condition in issue; and that the examination would "materially aid in the just determination of the case." The court commits an abuse of discretion "when no reasonable person would take its view." *In re Marriage of Pratt*, 2014 IL App (1st) 130465, ¶ 22.

¶ 21    In this case, defendant contends that Rule 215 "almost invariably applie[s] to *plaintiffs*" and that he did not place his physical condition in controversy simply by denying the allegations in the complaint. We find *Stevenson* instructive. In *Stevenson*, defendant's family members brought an action to appoint a conservator for the defendant's estate, alleging that the defendant was incapable of managing her estate because of her mental condition. *Stevenson*, 44 Ill. 2d at 526. After the defendant denied "substantially all of plaintiffs' material allegations," the plaintiffs requested a pretrial mental examination pursuant to Rule 215.[3] *Id.* at 527. The trial court granted

---

[3]    We acknowledge that Rule 215 has been amended since *Stevenson* was decided. For instance, the "good cause" requirement was removed from the rule effective June 1, 1995. According to the Committee Comments, "[t]he new language was adopted to effectuate the objectives of the rule with minimal judicial

this request and sanctioned the defendant for refusing to comply. *Id.* On appeal, the defendant challenged the applicability of Rule 215, arguing that her mental condition was not "in controversy," as she had not "affirmatively put her mental condition in issue." *Id.* at 528.

¶ 22    The supreme court rejected such a narrow reading and found that "limit[ing] the scope of Rule 215 as defendant suggests would not be consistent with either the letter or intent of the rule." *Id.* at 529. Pointing out that the purpose of Rule 215 is "to permit the discovery of facts which will assist the trier of fact," the supreme court explained that "[d]iscovery of a person's mental or physical condition may be just as appropriate in a case where the party sought to be examined has done nothing to put his condition in issue as in a case where the party sought to be examined has affirmatively raised his condition either in support of or in defense of a claim." *Id.* at 529-30. The supreme court further noted that a Rule 215 examination may be ordered "under appropriate conditions when all requirements of the rule have been met, *irrespective of who has raised the issue* of the person's physical or mental condition." (Emphasis added.) *Id*. at 530.

¶ 23    Defendant argues that plaintiff's unsubstantiated allegations did not suffice to place his medical condition at issue. Indeed, the most recent version of Rule 215 only allows a court to order a physical examination "where conflicting medical testimony, reports or other documentation has been offered as proof." Ill. S. Ct. R. 215(d)(1) (eff. Mar. 28, 2011); see also Ill. S. Ct. R. 215, Committee Comments (adopted Mar. 28, 2011) (noting that "[m]ere allegations are insufficient to place a party's mental or physical condition 'in issue' "). Contrary to defendant's claim, however, there are more than just unsubstantiated allegations in this case. Defendant submitted a declaration stating that he has never shown signs of herpes 2 and that he tested negative prior to the parties' encounter, which he supported by voluntarily presenting a

involvement. The requirement of 'good cause' was therefore eliminated as grounds for seeking an examination." Ill. S. Ct. R. 215, Committee Comments (adopted June 1, 1995).

medical record purporting to show that he tested negative for the virus on October 14, 2010. In doing so, defendant offered "conflicting medical testimony, reports or other documentation \*\*\* as proof" of his purported disease-free condition before and after the parties' sexual encounter. Defendant placed his physical condition squarely "in issue" by offering affirmative matter to rebut plaintiff's claim that defendant was infected with herpes 2 before and after their encounter. In any event, under *Stevenson*, it is irrelevant who placed defendant's physical condition at issue in this case, so long as it is in fact at issue. *Stevenson*, 44 Ill. 2d at 529-30.

¶ 24    Because defendant's physical condition was in issue, the circuit court had discretion to order an examination pursuant to Rule 215(d)(1), if it found that "such an examination will materially aid in the just determination of the case." We do not disturb the court's grant of a Rule 215 examination unless it appears that the court has abused its discretion. *Kaull v. Kaull,* 2014 IL App (2d) 130175, ¶ 82. "Although a 'good cause' requirement has been eliminated from Rule 215, physical and mental examinations, like all of our discovery devices, require that trial courts carefully exercise their discretion." *Id.* In the instant dispute, the circuit court stated that "the quickest way to resolve this case is to have him examined" because "[l]aymen's understanding of herpes is, once you've got it, you've always got it." Noting that defendant represented that "he doesn't have it now, and he never had it," the court concluded that the examination would allow the "quickest" resolution of the dispute. The record shows that the court considered the relevance of defendant's current condition in the ultimate disposition of this case, and we therefore find no abuse of discretion. See *id.* at ¶ 85 (finding that court did not abuse its discretion in ordering a Rule 215 exam where DNA results would be relevant discovery, despite defendant's objection based on admissibility of the DNA discovery as evidence).

¶ 25    In light of our reliance on *Stevenson* and Rule 215, we need not consider the out-of-state cases relied upon by defendant. See *Skipper Marine Electronics, Inc. v. United Parcel Service, Inc.*, 210 Ill. App. 3d 231, 239 (1991) (noting that "[d]ecisions of the reviewing courts of foreign jurisdictions are not binding on Illinois courts"). We also find *Kraima v. Ausman*, 365 Ill. App. 3d 530 (2006) and *Pritchard v. SwedishAmerican Hospital*, 191 Ill. App. 3d 388 (1989), cited by defendant, distinguishable from the case at bar.

¶ 26    *Kraima* involved a wrongful death action where it was alleged that the defendant was physically limited by arthritis when he performed surgery on the plaintiff's wife. *Kraima*, 365 Ill. App. 3d at 531-32. During discovery, the circuit court ordered the defendant's attorney to produce a medical disability claim file that the defendant had submitted to his employer. *Id.* at 531-32. Defendant's attorney refused to produce the file and was, consequently, held in contempt. *Id.* at 532. On appeal, this court found that the disability claim file was protected by the physician-patient privilege. *Id.* at 535. We also rejected the plaintiff's claim that the defendant had placed his physical condition at issue so as to bring his disability file within an exception to the privilege. *Id.* at 535-36. Defendant had merely testified at his deposition that he relinquished his position for health reasons and that he was not having any problems with his arthritis when he performed the surgery in question. *Id.* at 536. We concluded that "defendant did not affirmatively place his medical condition at issue simply because plaintiff alleged in the amended complaint that he was physically limited by arthritis when he performed the surgery." *Id.* In *Pritchard*, we found that another defendant did not affirmatively place his condition at issue where he merely defended himself in a medical malpractice action. *Pritchard*, 191 Ill. App. 3d at 392, 405.

¶ 27    *Kraima* and *Pritchard* do not involve the application of Rule 215. However, even if they did, we would find them factually distinguishable. The *Kraima* defendant merely denied that he was suffering from arthritis at the time of the surgery in question and did not present any medical evidence to place his condition in controversy. The *Pritchard* defendant did even less where he was merely the subject of a complaint. Here, defendant has submitted medical documents purporting to show that he was not infected with the herpes virus at the relevant time. In introducing this evidence, he affirmatively placed his medical condition in controversy, and the requirements of Rule 215 are thus satisfied.

¶ 28    Defendant also contends that test results showing whether he now has herpes 2 will not establish causation because the tests cannot prove that he was infected in 2011 or that he was the source of plaintiff's infection. Plaintiff argues that defendant has forfeited his causation argument because he failed to raise it in the proceedings below. We agree that defendant failed to raise this argument in the circuit court. *Martinez v. River Park Place, LLC*, 2012 IL App (1st) 111478, ¶ 29. This does not mean, however, that defendant cannot raise this argument at a later date when the results of his physical examination are known.

¶ 29                        2. Physician-patient privilege

¶ 30    Defendant next argues that requiring him to submit to a Rule 215 examination "would destroy Illinois' physician-patient privilege." He maintains that the circuit court properly held that the privilege applied to his medical records and that plaintiff should not be entitled to do an "end-run" around the privilege by seeking a Rule 215 examination. Plaintiff argues that the patient-physician privilege does not apply to the order in this case because it does not involve the disclosure of medical records by a party's physician or healthcare provider.

¶ 31    The physician-patient privilege is a creature of statute, which provides in relevant part:

> "No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient, except only *** in all actions brought by or against the patient ***." 735 ILCS 5/8-802 (West 2012).

¶ 32     Generally, discovery rulings are reviewed for abuse of discretion, but the applicability of a privilege, *i.e.*, the patient-physician privilege in this case, presents a legal question that is reviewed *de novo. Norskog*, 197 Ill. 2d at 71. Where the relationship between an examining physician and a party in a lawsuit is created by litigation, the patient-physician privilege does not attach "as a result of an examination by a physician, employed by an opponent, solely for the purpose of rendering a medical-legal opinion." *Moore v. Centreville Township Hospital*, 246 Ill. App. 3d 579, 587 (1993), *rev'd on other grounds*, 158 Ill. 2d 543 (1994). Accordingly, we have repeatedly held that the physician-patient privilege does not apply to Rule 215 examinations. In *Doyle v. Shlensky*, 120 Ill. App. 3d 807, 809 (1983), the plaintiff was ordered to undergo a Rule 215 examination later brought a medical malpractice claim against the court-appointed psychiatrist for an alleged violation of the statutory physician-patient privilege. *Id.* at 810, 813. We concluded that plaintiff's claim was insufficient as a matter of law because the statutory physician-patient privilege was inapplicable to a Rule 215 examination. *Id.* at 813-14. In *Salingue v. Overturf,* 269 Ill. App. 3d 1102, 1105 (1995), we again concluded that "the physician-patient privilege does not apply to reports obtained by defense counsel under the provisions of Supreme Court Rule 215." In light of our prior authority, we have no basis for finding a violation of the physician-patient privilege here.

¶ 33                                    3. Constitutional right to privacy

¶ 34    Defendant contends that ordering him to submit to a Rule 215 examination also violates his right to privacy under the Illinois and United States Constitutions. Initially, we note, as plaintiff points out in her brief, that defendant waived this argument by failing to notify the Attorney General in accordance with Illinois Supreme Court Rule 19 (eff. Sept. 1, 2006). Defendant, in reply, asserts that Rule 19 is inapplicable because he is not seeking to challenge the constitutionality of Rule 215, but rather, asserting that his constitutional rights "preclude him from having to undergo the test."

¶ 35    Illinois Supreme Court Rule 19(a) requires a party challenging the constitutionality of a statute to serve notice on the Attorney General or proper state agency in cases where the State is not a party. *In re Marriage of Winter*, 2013 IL App (1st) 112836, ¶ 28. Moreover, the requisite notice must be served "promptly after the constitutional *** question arises as a result of a circuit or reviewing court ruling or judgment." Ill. S. Ct. R. 19(b) (eff. Sept. 1, 2006).

¶ 36    We are persuaded that Rule 19 does apply in this case. In his response to plaintiff's Rule 215 motion, defendant argued that a Rule 215 examination would violate his right to privacy under the Illinois Constitution. This contention can only be considered an as applied challenge to the constitutionality of Rule 215. Defendant does not deny that he failed to give Rule 19 notice to the appropriate authority, but rather, argues that he can still give timely notice "should this Court determine he is indeed required to undergo the requested examination." Failure to comply with the requirement to provide notice under Rule 19 notice results in a forfeiture of the constitutionality argument. *Serafin v. Seith*, 284 Ill. App. 3d 577, 587 (1996) (challenge to statute based on constitutionality waived where claimant failed to issue notice pursuant to Rule 19). It has now been over a year since the constitutional issue arose as a result of the Rule 215 order.

Any Rule 19 notice filed at this point would be untimely and, thus, we find that defendant has forfeited the instant constitutional issue. *Marriage of Winter*, 2013 IL App (1st) 112836, ¶ 28.

¶ 37                              B.  Good-Faith Basis for Noncompliance

¶ 38     Defendant contends that his refusal to comply with the court's Rule 215 order was a good-faith effort to secure an interpretation of the rule. Here, the circuit court denied defendant's Rule 308 motion, disagreeing with defendant's argument that this case presented issues of "first impression within this district and within this state and are worthy of an appropriate appeal under 308." Defendant's counsel then suggested that the court enter a contempt order so that he could take an appeal. In doing so, counsel represented that the "goal was not to delay or unnecessarily cause expense. It is to get the issue resolved as a matter of law in the appropriate place."

¶ 39     We find that the record supports the conclusion that the circuit court intended to enter a friendly contempt order to allow defendant to appeal the underlying Rule 215 order. First, the court acknowledged that defendant had informed the court "in a very gentlemanly way" that he was not going to comply with the Rule 215 order. Second, the circuit court indicated that the $1,000 fine was being imposed as a "penalty which is required in order to furnish the legal underpinning for an interlocutory appeal under Rule 304." Third, the court stated that it "only made the contempt finding *** in order to facilitate an interlocutory appeal" so as to avoid "hav[ing] a trial on damages *** and then find[ing] that the evidence of tort was inadmissible." See *In re Marriage of Nash*, 2012 IL App (1st) 113724, ¶ 30 (vacating contempt order where trial court found party in " 'friendly contempt' " because refusal to comply " 'was done with respect to the process and solely to advance a legal theory *** [as] an issue of first impression' ").

14

¶ 40    We acknowledge that the court did not specifically state in the October 29 order that its findings were based on "friendly contempt." However, the absence of this specific language, under the circumstances, does not negate the circuit court's acknowledgment that defendant was seeking a contempt order for the sole purpose of filing an interlocutory appeal. The notion of a contempt order was introduced by defendant's counsel after the court denied the Rule 308 motion. There was no evidentiary hearing or findings regarding defendant's ability to comply with the underlying Rule 215 order, and the court acknowledged, at least three times, that the contempt order would allow defendant to appeal the Rule 215 order. Thus, we find that defendant's noncompliance was based on "a good-faith effort to secure an interpretation of an issue without direct precedent." We therefore vacate the October 29 contempt order.

¶ 41                    C. Circuit Court's Jurisdiction on November 14, 2013

¶ 42    Next, we address the issue of whether the circuit court had jurisdiction on November 14, 2013 when it entered its second contempt order. Defendant argues that the court lacked jurisdiction because he had filed his notice of appeal on October 30, 2013. Plaintiff argues that defendant's notice of appeal was premature because the October 29 contempt order "was clearly not meant to be the judge's final word on the Rule 215 and contempt issue." Illinois Supreme Court Rule 304 allows for interlocutory appeals of certain orders, including "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." Ill. S. Ct. R. 304(b)(5) (eff. Feb. 26, 2010). We have previously noted that the imposition of sanctions renders a contempt order final and appealable. *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1026 (2003). Here, the October 29 contempt order imposed an "immediate sanction" of $1,000, and was appealable under Rule 304(b)(5).

15

¶ 43    "[U]pon the filing of a notice of appeal, the circuit court is divested of jurisdiction to enter any order involving a matter of substance and thereafter retains jurisdiction only to decide matters independent of and collateral to a judgment." *Wierzbicki v. Gleason*, 388 Ill. App. 3d 921, 926 (2009). Ultimately, "any order entered while the circuit court is divested of jurisdiction during the pendency of an appeal *** is void." *Id.* (citing *American Smelting & Refining Co. v. City of Chicago*, 409 Ill. 99, 104 (1951)).

¶ 44    In this case, the circuit court lost jurisdiction over the Rule 215 issue when defendant filed his notice of appeal on October 30, 2013. We disagree with plaintiff's contention that the court's contempt order of October 29, 2013 was merely preliminary and not final. Plaintiff cites no legal authority to support her argument that a contempt order is preliminary where the contemnor is given an opportunity to purge the contempt. We thus find that the court lacked jurisdiction to enter the second contempt order. Therefore, we vacate the November 14, 2013 order and remand the cause for the court to vacate all orders entered on or after that date, including the default judgment.

¶ 45                    D. Violation of Public Policy

¶ 46    Finally, we address defendant's argument that, as a matter of public policy, a plaintiff should not be able to seek a Rule 215 examination where she has been able to proceed under a pseudonym. Defendant asserts that "[t]he use of pseudonyms is disfavored in Illinois and is limited to situations intended to protect children, victims of sexual abuse and other vulnerable citizens and, specifically, is not permitted for mere embarrassment."

¶ 47    Defendant has clearly raised his public policy argument to indirectly challenge the circuit court's order allowing plaintiff to proceed anonymously. That order is not properly before us on appeal, however, and we therefore will not consider it. *In re Marriage of Nettleton*, 348 Ill. App.

3d 961, 968 (2004) (noting that review of a finding of indirect civil contempt encompasses a review only of the order that the party has refused to comply with). Defendant has failed to cite anything that could be construed as a public policy against ordering a Rule 215 examination in a case where one of the parties is proceeding anonymously. Seeing as defendant has not supported his argument with any relevant authority, we decline to consider it further.

¶ 48                                    CONCLUSION

¶ 49    For the reasons stated, we affirm the circuit court's contempt order entered on October 29, 2013, and vacate its contempt order entered on November 14, 2013. The cause is remanded for further proceedings not inconsistent with this order.

¶ 50    Affirmed in part and vacated in part. Cause remanded.